# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DAVID KNIGHT,**

        **Plaintiff,**

**-vs-**                                          **Case No. 6:08-cv-457-Orl-22DAB**

**ALLSTAR BUILDING MATERIALS, INC.,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:** **MOTION FOR SUMMARY JUDGMENT (Doc. No. 29)**
>
> **FILED:** **June 19, 2009**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

On March 28, 2008, Plaintiff David Knight filed his Complaint against his former employer, Defendant Allstar Building Materials, Inc. ("ABM"), to recover unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA")[1]. Doc. No. 1. On April 25, 2008, ABM answered and filed its affirmative defenses (Doc. 4), including that the provisions of the Portal to Portal Act precluded Plaintiff's recovery, 29 U.S.C. § 254. On June 19, 2009, Defendant ABM moved for summary judgment, arguing that Plaintiff is not entitled to compensation for travel time

---

[1] Plaintiff made a reference in the Complaint to "Chapter 448, Florida Statutes" but failed to set forth a separate count for violation of state law, either in the Complaint or in response to the Motion for Summary Judgment.

under the Port to Portal Act, and he failed to adequately support any other overtime claim. Doc. No. 29. Plaintiff filed a Response on July 20, 2009 (Doc. No. 32); and, after ABM filed a motion seeking to file a reply (Doc. No. 36), Plaintiff sought leave to file an amended response ten days later (Doc. No. 37), which was opposed. Doc. No. 38. The Court allowed Plaintiff to file the Amended Response (Doc. No. 40) and ABM to file its Reply, which it did on August 24, 2009. Doc. No. 41. ABM also filed a Motion to Strike newly-generated summary exhibit attached to Plaintiff's Amended Response (Doc. No. 42), which was referred to this Court on September 8, 2009. ABM's Motion for Summary Judgment is now ripe for determination.

For the reasons set forth below, the Court recommends that ABM's Motion for Summary Judgment be **GRANTED**.

### *I. BACKGROUND FACTS[2]*

Plaintiff was employed by ABM as a carpenter's apprentice or laborer from approximately October 9, 2006 to November 9, 2007 in the ABM trim division. Doc. No. 9; Doc. No. 12-2. ABM was founded in 1987 by Thomas Crowe in Ormond Beach, Volusia County, Florida; Crowe remains in charge of the daily operations of ABM and serves as its president. Plaintiff's direct supervisor was Thomas Verble, whose direct supervisor was Mark Heino, the superintendent of the Trim Division. Doc. No. 9; Doc. No. 29-9 ¶ 2.

Plaintiff's principal job duties were to assist the head carpenter by carrying base boards and crown molding from the saw to the wall and by nailing it in place. Doc. No. 9. ABM paid Plaintiff for more than 142 hours of overtime between August 14, 2005 and September 9, 2007. Doc. No. 12-3

---

[2]The Background Facts are either undisputed or read in the light most favorable to Plaintiff, as they must be on summary judgment. *See Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) ("Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case.").

(ABM verified summary). Plaintiff concedes that he was paid overtime in 2006 and 2007, although he could not testify as to the amount. Doc. No. 29-3, Knight Dep., at 8. It is undisputed that ABM compensated Plaintiff only for the time spent after he arrived at the job site, and not for time spent loading trucks, or traveling to the job site. Doc. No. 40-6, Heino Dep. at 24.

Jacksonville and Kissimmee, Florida are part of an ABM employee's commuting area because ABM contracts for work outside of Volusia County, Florida. Doc. No. 29-9 Heino Aff. ¶ 6. ABM employees could ride to a job site outside Volusia County in an ABM pickup or box truck. Doc. No. 29-2, Crowe Aff., ¶ 7; Doc. No. 29-9, Heino Aff. ¶ 5, 17; Doc. No. 29-8, Verble Aff. ¶ 5, 17. During the course of his employment with ABM, Plaintiff traveled in ABM pick up or box trucks to job sites located outside of Volusia County, Florida, including Jacksonville and Kissimmee, Florida. Doc. No. 29-3, Knight Dep. at 31. Employees were informed that they would not be compensated for riding to the job site. Doc. No. 29-9 ¶ 11. Plaintiff believed that it was "never an option" for Plaintiff to drive his own car to sites outside the County because "they never offered it." Doc. No. 29-3 at 29-30. Typically, employees would drive their own vehicles to job sites within Volusia County. Doc. No. 29-8 ¶ 5.

Typically, the driver of the pickup or box truck was a supervisor (which Plaintiff was not), unless the supervisor was absent or otherwise unavailable. Doc. No. 29-9 ¶ 7; Doc. No. 29-8 ¶ 7. Drivers of the box or pickup trucks were paid for loading any miscellaneous tools or materials – such as screws, tape, trim caulk, or drill bits – and for driving to the job site. Doc. No. 29-2 ¶¶ 11, 12; Doc. No. 29-9 ¶¶ 7, 15; Doc. No. 29-8 ¶ 15. These miscellaneous materials were not routinely needed because it was custom and practice for materials like lumber, doors, trim, crown, and base to be

delivered by AMB's material delivery tractor trailers[3] (that did not allow passengers) from ABM's lumber yard, so the materials were ready for use by AMB employees when they arrived for work at the job site. Doc. No. 29-9 ¶¶ 8, 15; Doc. No. 29-8 ¶ 11; Doc. No. 29-2 ¶ 10.

At times, ABM employees, prior to being driven to the job site, loaded their own tools into the truck. Doc. No. 29-2 ¶ 11. All other tools were available at the job site in a job box. Doc. No. 29-2 ¶ 11; Doc. No. 29-9 ¶ 8; Doc. No. 29-8 ¶ 8, 17. If tools were brought on the box truck or pickup truck, such as a portable air compressor or portable generator, such tools were left on that truck at ABM and secured with that truck for the next business day's trip to the job site. Doc. No. 29-2 ¶ 11; Doc. No. 29-9 ¶ 17; Doc. No. 29-8 ¶ 17. Compressors and generators were at the job sites; thus, it would be unusual to transport such equipment, but there was a backup generator and compressor in the box truck and sometimes in the trailer of the truck that would only be unloaded if a job site unit failed or additional generators were needed at the job site. Doc. No. 29-9 ¶ 17.

Employees who rode in ABM box or pickup trucks to job sites outside of Volusia County met the truck at commercial locations near a main road, such as Interstate 95. Doc. No. 29-9 ¶ 12. For example, Mr. Verble, Plaintiff's supervisor, picked up Plaintiff at the Publix Shopping Center for a ride to the Kissimmee (Osceola County) job. Doc. No. 29-8 ¶ 12. In order to ride in the ABM pick up or box truck, Plaintiff was required to be at the meeting site at 5:30 a.m. Doc. No. 29-3 at 30. Thomas Verble would have already loaded items as nails, screws, buckets, drills, bits, and tools in the truck, but Plaintiff would have to place these items in the back of the vehicle and tie them down to make sure that they did not blow out along the way to the job site. Doc. No. 29-3 at 30-31.

---

[3]Plaintiff does not allege that he traveled to the job site in a material delivery tractor trailer. Doc. No. 29-9 ¶ 8. Such trucks are significantly larger commercial vehicles. *See* Doc. Nos. 29-10, 29-11 at 2.

In the truck, they would talk about the "game plan" for the day during the ride. Doc. No. 29-3 at 30. There was no pre-work or post-work "instruction" for the job necessary either before or during the ride because, as a carpenter's apprentice or laborer, he was given instructions on what to do while he was at the job site, when he acted as a helper to the carpenters, such as, "bring me materials"; "move something"; "hand me a hammer or drill"; or "bring me a piece of wood" at the job site. Doc. No. 29-9 ¶ 16; Doc. No. 29-8 ¶ 16. Plaintiff filled out time sheets or safety sheets on the ride to Kissimmee. Doc. No. 29-3 at 29. However, Plaintiff was not a supervisor and was not required to fill out paperwork. Doc. No. 29-9 ¶ 16.

Plaintiff alleges that ABM reduced the hours listed on his time sheets without his authorization. Doc. No. 29-3, Knight Depo. at 28. Several of Plaintiff's time sheets contain handwriting that is not Plaintiff's or have numbers crossed out and changed. Doc. No. 29-3 at 18-21; 23-24. Trim Division Superintendent, Mr. Heino, reviewed Plaintiff's and other worker's time sheets for errors and would correct them when necessary prior to them submitting them for payment. Doc. No. 29-9 ¶ 19. Mr. Heino would initial the time sheets and correct any errors, for example, if an employee took a lunch and marked that they did not, or if the employee left early or worked longer hours than actually worked and did not accurately reflect that on the time sheet. Doc. No. 29-9 ¶ 19. Mistakes in pay on ABM's part were corrected once they were brought to ABM's payroll department; disputes that remained unresolved were directed to Tom Crowe. Doc. No. 29-9 ¶ 21; Doc. No. 29-8 ¶ 20. After this litigation was filed, Mr. Heino was instructed by Tom Crowe to look for some missing time sheets, but he could not locate them; however, all the time from the time sheets was recorded in the ABM payroll system. Doc. No. 29-9 ¶ 22. ABM did not produce four months of Plaintiff's time sheets (*see* Doc. No. 29 at 5) although ABM has the payroll records that show overtime payments were made during that time. *See* Doc. 12 through Doc. 12-3.

## *II. SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1356 (11th Cir. 2007)). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "A fact is material if it may affect the outcome of the suit under the governing law." *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The evidence of record is reviewed in the light most favorable to the non-moving party. *Fennell*, 559 F.3d at 1216 (citing *Welding Servs*, 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1321 (11th Cir. 2006)(citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (conclusory allegations without specific supporting facts have no probative value). If material issues of fact exist that would not allow the Court to resolve an issue as a matter of law, the Court must not

decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir. 1999)[4].

## *III. ANALYSIS*

ABM seeks summary judgment on Plaintiff's claims for overtime, arguing that Plaintiff failed to properly articulate the amount of overtime he was seeking and the supporting dates, and that travel time is precluded by the Portal to Portal Act. At Plaintiff's October 2008 deposition, Plaintiff made two allegations in support of his overtime claims: (1) he should be paid for loading vehicles or travel time from a meeting site in Volusia County to job sites outside Volusia County; and (2) he should be paid for time on his time sheets that was crossed out.

### A. Portal to Portal Act exclusions

The vast majority of compensation sought by Plaintiff[5] is for time he alleges he spent loading materials and traveling from a meeting site in Volusia County, where ABM is headquartered, to job sites outside Volusia County. Doc. No. 40. ABM argues that Plaintiff has not shown any exception to the Portal-to-Portal Act because there was no company policy that required Plaintiff to ride in Defendant's truck to the jobsites; such activity was voluntary and for the employee's own convenience. Doc. No. 29 at 7; Doc. No. 41 (Reply). Plaintiff contends he "would load and secure tools and materials"; and he "then traveled in ABM's trucks to various job sites outside Volusia County" and he was not compensated for this time. *See* Doc. No. 40 at 2.

---

[4]ABM cited *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1951 (2009) and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), the prevailing case law for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b). The *Iqbal* and *Twombly* decisions deal with a completely different procedural posture, *i.e.*, allegations in a complaint prior to, or without consideration of, the evidence garnered in discovery; and they do not set the standard of review at the summary judgment stage, *i.e.*, whether a genuine issue of material fact exists for trial.

[5]Plaintiff belatedly submitted a "Chart of Hours," which is discussed in detail below.

Under § 207 of the FLSA, "an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate. A person is employed if he or she is suffered or permitted to work." *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. 207(a)). On a claim that a plaintiff was permitted to work without receiving overtime compensation, the plaintiff bears the initial burden to demonstrate that: (1) plaintiff worked overtime without compensation, and (2) defendant knew or should have known of the overtime work. *Id.* at 1314-15 (citing *Reich v. Dep't of Conservation and Nat. Res.*, 28 F.3d 1076, 1081-82 (11th Cir. 1994)).

The Portal-to-Portal Act, 29 U.S.C. §§ 251-262, functions as an exclusion to FLSA coverage. If the Portal-to-Portal Act is applicable to a work scenario involving transportation to and from a jobsite, travel time is not compensable under the FLSA. Pursuant to the Portal-to-Portal Act:

> An employer is not subject to liability under the FLSA for failure to pay employees overtime compensation for:
>
> (1) Walking, riding, or traveling to and from the actual place of performance of the principal activity or activities, which such employee is employed to perform, and
>
> (2) Activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time or on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a); *see Burton v. Hillsborough County, Florida*, 181 Fed.Appx. 829, 833 (11th Cir. 2006) (unpublished). Thus, to prevail Plaintiff must prove that his time spent "loading" ABM trucks and riding as a passenger in the trucks to job sites were not merely preliminary and postliminary

-8-

activities to Plaintiff's principal activity of working as a carpenter's apprentice or laborer. *See Balzarano v. Allstar Building Materials, Inc.*, Case No. 6:08-cv-281-Orl-35GJK (M.D. Fla. July 16, 2009) (Scriven, J.)[6].

Preliminary and postliminary activities are defined as those "undertaken for [the employee's] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Id.* (*Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398 (5th Cir.1976); *Burton*, 181 Fed.Appx. at 837). "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [29 U.S.C. § 254(a)] of the Portal-to-Portal Act" and is therefore compensable. *Balzarano*, at 10 (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005)). The court finds, as Judge Scriven previously did in considering the virtually identical case of a carpenter's apprentice working for ABM, that the "Plaintiff's claimed intermittent assistance in loading ABM trucks and his riding as a passenger in the trucks to jobsites are non-compensable preliminary and postliminary activities." *Id.* at 10. It is undisputed that Plaintiff would have been compensated on days, if any, that he was required to drive the ABM pickup or box trucks to the job sites.

ABM argues, and it is undisputed, that their employees had a choice to either drive their own vehicle to a job site outside the county or ride in an ABM pickup or box truck to the job site, but that they would not be paid for riding. Doc. No. 29-2, Crowe Aff., ¶ 7; Doc. No. 29-9, Heino Aff. ¶¶ 5, 10; Doc. No. 29-8, Verble Aff. ¶¶ 5, 10. Employees were not required to ride in an ABM box truck or pickup truck to and from the job site, they agreed to do so voluntarily, and Jacksonville and

---

[6]Plaintiff is one of three laborers to have filed three *separate* suits (with the same counsel) against ABM claiming overtime for riding to job sites. *See Balzarano v. Allstar Building Materials, Inc.*, Case No. 6:08cv281; and *Weaver v. Allstar Building Materials,* Case No. 6:08cv510. Had the second two claimants filed as opt-in plaintiffs, the cases would have been decided more expeditiously and with greater judicial efficiency.

Kissimmee were part of an ABM employee's normal commuting area for ABM.  Doc. No. 29-2 ¶ 8; Doc. No. 29-9 ¶¶ 5, 6; Doc. No. 29-8 ¶ 5.

By Plaintiff's own account, the only purported "loading" he was required to do was to move tools or other supplies such as caulk or screws from the cab of the pickup or box truck to the back of the truck, presumably so that he could sit in the cab.  His supervisor was the driver and the supplies were already in the vehicle when he stopped to pick him up.  He was not required to "load" materials into the ABM truck prior to its departure for the job site because such materials were delivered by an ABM tractor trailer that did not allow passengers.

Plaintiff's moving of screws, nails, and drill bits to the rear of the vehicle and "tying them down so they did not blow away" was not an "integral and indispensable" requirement to his principal activity on the job site of assisting the carpenters.  All of the heavy duty materials were delivered to the job site separately without Plaintiff's involvement.  The screw and nail-type supplies were brought to the job site by the driver of the pickup or box truck, Mr. Verble, Plaintiff's supervisor, and they would have been at the job site, with or without his assistance.  Other tools were located at the site in a job box.

Under the Portal to Portal Act, the time Plaintiff spent "loading" or moving such supplies from the cab of the pickup to the rear and tying the supplies down was an "incidental" activity performed so that he could ride in the cab, and is exempt from compensation under the FLSA.  *See Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 (11th Cir. 2007); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1290 (10th Cir. 2005); *see* 29 U.S.C. § 254(a) ("the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area").

Plaintiff contends that the time he spent traveling on an ABM vehicle to the job site was "outside of the normal commuting area for Defendant ABM's business" and is not exempt from compensation by the Portal-to-Portal Act. Doc. No. 40 at 15. As an initial matter, Plaintiff cites no evidence – only conclusory argument – to contradict ABM's undisputed evidence that Kissimmee and Jacksonville are within ABM's normal commuting area. Moreover, "'Normal travel from home to work [whether at a fixed location or at different job sites] is not worktime' because it is 'an incident of employment,' and is therefore not compensable." *Burton*, 181 Fed.Appx. at 834 (citing 29 C.F.R. § 785.35).

Plaintiff mistakenly relies on language in the Burton decision which holds that "[w]here an employee is required to report to a meeting place to perform other work there, *or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom or practice*." Doc. No. 40 at 15 (citing *Burton*, 181 Fed.Appx. at 834 (emphasis added by Plaintiff). Plaintiff was picked up at the meeting point at Publix Shopping Center and it is undisputed that he did not perform any work there. He also was not required to pick up or to carry tools, but merely to move them out of the cab of the truck and secure them in the rear so they would not blow out and so he could ride in the cab. Travel time from the meeting place at Publix Shopping Center to the job site in Kissimmee or Jacksonville – the "actual place where he d[id] what he [was] employed to do" – even though these job sites were "off the employer's premises," is exempted from compensation under the Portal-to-Portal Act. 29 C.F.R. § 790.7(c). "Otherwise non-compensable [travel time] is not compensable merely because the employee uses his employer's vehicle." *Burton*, 181 Fed.Appx. at 835. Plaintiff's decision to ride

on ABM trucks, "because he had no choice"[7] to reach the worksite, rather than provide his own transportation at his personal expense from his home to the worksite, does not convert his ride time to Jacksonville and Kissimmee into compensable time under the FLSA. *Balzarano*, at 11 (citing *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994)("The fact that travel time was so long does not make it compensable under the statute.").

Even when viewed in the light most favorable to Plaintiff, the Court finds that Defendant is exempt under the Portal-to-Portal Act from compensating Plaintiff for the incidental time he spent moving screws and drills from the cab of the pickup truck to the rear of the truck and for the time spent traveling in ABM trucks to worksites in Jacksonville and Kissimmee.

### B. Entitlement to overtime wages for time spent other than traveling

Plaintiff alleged in his sparse Complaint that he was due overtime, without alleging the basis for the claim. He alleged in his response to Court Interrogatories that due to "travel time to and from job sites" his hours varied but he "averaged working between ten and twenty hours of overtime per week." Doc. No. 9.

While Courts have recognized that an employee shall not be penalized for an employer's failure to keep accurate records, the employee must first carry his burden on an FLSA claim by proving that "he has in fact performed work for which he was improperly compensated and produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Allen v. Bd. of Public Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007). Once the Plaintiff carries this burden, the burden shifts to the employer to "bring forth either

---

[7] Plaintiff testified that "he wasn't financially secure" at that time. Doc. No. 29-3 at 34.

evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Id.*

Plaintiff initially alleged in his response to Court Interrogatories on April 30, 2008, that although he "averaged working between ten and twenty hours of overtime per week," he did not have "an exact accounting of his actual pay." Doc. No. 9. Even after receiving ABM's verified summary (Doc. No. 12), Plaintiff did not supplement his wage claim with any more precise detail, nor did he review the records in any detail before his deposition. At his deposition on October 28, 2008, Plaintiff alleged for the first time that he might be owed overtime for hours listed on his time sheets that were "crossed out" by someone else; presumably this would have been Mark Heino, the Trim Supervisor, who stated in his affidavit that he would check over employees' time sheets and correct errors.

As ABM pointed out at length in its Summary Judgment Motion, Plaintiff filed a bare-bones complaint, failed to assert any dates he was not paid overtime, and has not disputed that he was paid overtime for one hundred and forty-two hours between 2005 and 2007. Doc. No. 29 at 2-4. Plaintiff testified at his deposition:

> Q. What do you mean that Allstar violated the law in your pay?
> A. They failed to pay me hours I worked.
> Q. All right. What hours were you failed to be paid?
> A. Hours that I worked.
> Q. All right. What days?
> A. I'd have to refer to the papers.
> Q. All right. I have the papers here. I have your payroll records and I have your time sheets. I'm gonna give 'em all to you.
> A. And that would be something that I would have to look in detail with my lawyer.
> Q . All right. To this day you really haven't reviewed any of these details?
> A . Not in detail.
> Q . All right. So you don't know if they owe you for one hour or a hundred hours?
> A . I would have to refer to the papers.
> Q . All right. Here's what I have as your time records and your timesheets per payroll period. Take a look at those, look at your --

> A. I'd have to look at these with my lawyer in detail 'cause I don't understand them.
> * * *
> Q Do you have any documents, any notes, anything that would reflect when you first felt you weren't being paid properly?
> A At this time I don't know.
> Q Okay. Is there some way you would know more in the future that you don't know now?
> A I don't know.
> * * *
> Q. All right. And are there any other documents that we haven't discussed that would help refresh your memory on any of this?
> A. I don't know.
> Q. All right. Do you have any?
> A. Not at this time I don't.
> Q. All right. Did you give your lawyer any documents?
> A. I don't believe so.

Doc. No. 29 (citing Knight Dep. at 8-9, 14, 55). ABM argued in its Motion, "the bottomline to [Plaintiff's] Complaint of not being paid overtime is that he does not know that he wasn't paid properly during his working time at ABM even though he had those payroll records . . . over two months prior to his deposition." Doc. No. 29 at 7.

Plaintiff could not recall at his deposition the dates of any such alterations which reduced his time and he did not even know whether ABM's changes "would be to *either take time away or to correct that. I wouldn't know*." Doc. No. 29-3 at 27 (emphasis added). He also could not say whether where it was scratched out and reduced it did not reflect the real hours he worked. Doc. No. 29-3 at 47. Then, more than *sixteen months* after filing the initial Complaint and *nine months* after his deposition, Plaintiff's counsel filed a unauthenticated "Chart of Hours" on July 20, 2009[8] and attached it to Plaintiff's Response to ABM's Motion for Summary Judgment. *See* Doc. No. 32.

---

[8]Plaintiff's "Chart of Hours" in this case was filed within 4 days of Judge Scriven's granting summary judgment to ABM in the *Balzarano* case on July 16, 2009. Case No. 6:08cv281, Doc. No. 62.

When ABM objected and sought to file a reply criticizing the belatedly-filed, unauthenticated "Chart of Hours," Plaintiff sought leave to file an "Amended Response" which the Court granted. Plaintiff's Amended Response used the exact same "Chart of Hours," but in an affidavit from Plaintiff dated nine days *after* the "Chart of Hours" was first submitted states that Plaintiff was producing the "Chart of Hours" as his "best recollection." Doc. No. 40-4. ABM filed its Motion to Strike, which the Court denied, stating the "asserted deficiencies and defects in the affidavit and chart will be considered in deliberation of the motion for Summsheary Judgment." Doc. No. 42.

With an incredible level of specificity given Plaintiff's inability to recollect any particular overtime owed at his deposition (aside from travel time), the "Chart of Hours" now claims that Plaintiff is owed unpaid wages and overtime compensation for precisely 6.75 hours of time spread over 15 days (nearly three years before the Chart was submitted) which was spent "loading vehicles"[9] and "cleaning the job site," for total wages of $89.00; one hour for an office meeting on October 1, 2007; and four hours on October 5, 2007 for which he was not compensated as the result of an office mistake ($72.00), for an overall total in (non-travel) time of $161.00.

At his deposition, Plaintiff displayed a complete lack of specific recollection whatsoever concerning overtime. This contrasts alarmingly with the very specific "Chart of Hours" which was obviously prepared after his vague and unsupported deposition testimony when he could not say with any certainty whether any hours had even been reduced from his recorded time. Under these circumstances, the Court rejects the "Chart of Hours" as a "sham affidavit."[10]

---

[9]The Court interprets this to mean time purportedly spent separate and apart from travel time, which Plaintiff described as "Portal to Portal" in a different section of the "Chart of Hours."

[10]In addition, discovery closed on May 20, 2009; thus, any response to a discovery request in the form of a "Chart of Hours" was clearly untimely.

"Under the law of [the Eleventh] Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003); *see also Fisher*, 238 F.R.D. at 284 (explaining and applying "sham affidavit" rule). The sham affidavit rule "is applied sparingly because of the harsh effect it may have on a party's case." *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1316 (11th Cir. 2007) (citation and internal quotations omitted). Under the sham affidavit concept, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).

Particularly given the sequence of events in this case, in which the "Chart of Hours" was filed specifically to overcome a complete dearth of testimony in Plaintiff's deposition[11] pointed out at length in ABM's Summary Judgment Motion (see Doc. No. 29 at 2-7), the discrepancy is "obvious and glaring" and "it was incumbent on plaintiff to provide some justification for the abrupt shift in [plaintiff's] testimony." *Nicholson v. Johanns*, Case No. 06-635, 2007 WL 3407045 (S.D. Ala. Nov. 13, 2007), *aff'd*, 275 Fed. Appx. 878 (11th Cir. 2008). "Simply put, the sham affidavit rule ensures that litigants cannot engage in wholesale revision of their testimony whenever expedience favors it; otherwise, discovery would be meaningless, the value of depositions would be negligible, and the summary judgment procedural device would be largely useless." *Nicholson*, 2007 WL 3407045 at *4 n.8.

---

[11]Aside from ride or travel time.

Without the "sham affidavit" and Chart of Hours, Plaintiff has provided no evidence that he was entitled to overtime for cleaning or loading, or even that his hours were reduced by ABM. Therefore, Plaintiff has not carried his burden[12], and ABM is entitled to summary judgment.

### *IV. CONCLUSION*

Based on the foregoing, it is respectfully **RECOMMENDED** that ABM's Motion for Summary Judgment (Dkt. 29) be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 30, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

---

[12] The Court does not reach Defendant's alleged failure to maintain adequate time records.