**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAVID KNIGHT,**

              **Plaintiff,**

**-vs-**                                                **Case No. 6:08-cv-457-Orl-22DAB**

**ALLSTAR BUILDING MATERIALS, INC.,**

              **Defendant.**
_____

## ORDER

### I. INTRODUCTION AND BACKGROUND

This cause is before the Court for consideration of Defendant Allstar Building Materials, Inc.'s ("Allstar") Motion for Summary Judgment (Doc. No. 29) filed on June 19, 2009. Plaintiff David Knight ("Knight") filed his Amended Response in opposition (Doc. No. 40) on August 17, 2009.

Knight alleges in his Complaint (Doc. No. 1), filed March 28, 2008, that Allstar, his former employer, failed to pay him overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[1] (*Id.* ¶ 1.) Knight filed a motion on January 8, 2009, for leave to amend the complaint to add a count for violation of the Portal-to-Portal Act., 29 U.S.C. § 254 *et seq.* (Doc. No. 23.) The Court denied the motion. (Doc. No. 25.) In its Amended Answer (Doc. No. 15), filed June 5, 2008, Allstar asserts its affirmative defenses, including that Knight received all remuneration for which he was entitled, that Allstar is not liable for payment of wages falling under the Portal-to-Portal

---

[1] As Judge Baker states in his Report and Recommendation, Knight "made a reference in the Complaint to 'Chapter 448, Florida Statutes' but failed to set forth a separate count for violation of state law . . . ." (Doc. No. 47 p. 1 n.1.)

Act, and that it had an objective and subjective belief that it was not in violation of the FLSA. (*Id.* at ¶¶ 17-20.)

Knight, who was employed as a carpenter's apprentice by Allstar, a building materials company, contends that Allstar owes him overtime compensation for hours he worked.[2] According to Knight, these hours include time when he was required to report to work early in the morning, secure various materials in the truck beds of employer-owned vehicles, and then travel in those vehicles to job sites he claims were outside of Allstar's normal commuting area. Knight argues that Allstar's motion for summary judgment should not be granted because Allstar failed to maintain accurate records, has been unable to produce four months of Knight's time sheets, and falsified some of his time sheets.

Allstar argues that the hours for which Knight claims compensation are not work time under the Portal-to-Portal Act, exempting Allstar from liability to Knight. According to Allstar, riding on company vehicles was voluntary and provided as a convenience to the employees. Allstar contends that employees were informed that they would not be compensated for this travel time. Further, Allstar argues that any work Knight might have done in conjunction with riding in the vehicles was not integral and indispensable to the primary activity for which he was employed and was *de minimus*. Allstar also asserts that Knight's deposition testimony and his answers to the Court's interrogatories demonstrate that Knight did not know how much, if any, overtime pay he was owed.

---

[2] Plaintiff is one of three laborers who filed suits against Allstar claiming overtime pay for riding to job sites. *See Balzarano v. Allstar Building Materials, Inc.*, Case No. 6:08-cv-281; and *Weaver v. Allstar Building Materials, Inc.*, Case No. 6:08-cv-510.

United States Magistrate Judge David A. Baker submitted a Report and Recommendation ("R & R") (Doc. No. 47) recommending that Allstar's motion for summary judgment be granted. After an independent *de novo* review of the record in this matter, including the objections filed by Knight, the Court agrees entirely with the magistrate judge's conclusion that the time is not compensable worktime and will grant Allstar's motion for summary judgment.

## II. ANALYSIS

### A. Allstar's Motion for Summary Judgment

In its motion for summary judgment, Allstar argues that Knight was paid overtime wages for any hours he worked exceeding 40 hours per week.[3] (Doc. No. 29 pp. 3-7.) Allstar contends that its payroll records show that Knight was paid for over 142 hours of overtime between August 14, 2005, through September 9, 2007. (*Id.* at 4) (citing Doc. 12-3). Allstar also argues that any discrepancy in Knight's pay would have been resolved if he had notified Allstar. (*Id.* at 6.) Allstar asserts that riding in the company vehicles to the job sites was voluntary and that voluntary riders were "brought along" from the Allstar "yard" or picked up at parking lot meeting sites. (*Id.* at 8.) Allstar also contends that any work Knight performed before riding in the truck was *de minimus* in nature because all of the major tools and supplies were delivered by large trucks or were already at the job site. (*Id.* at 11.)

Allstar gives examples of various types of travel time considered non-compensable. (*Id.* at 13-20.) In *Kavanagh v. Grand Union Co.*, 192 F.3d 269, 272 (2d Cir. 1999), the court found that the FLSA did not require an employer to pay a refrigerator mechanic overtime for his "normal travel"

---

[3] Allstar's initial argument is that Knight fails to state a cause of action. However, the Court agrees with Judge Baker that Allstar erred in citing caselaw pertaining to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b) because this caselaw does not provide the standard of review applicable to summary judgment motions. (*See* Doc. No. 47 p. 7. n.4.)

time between home and work. Even though the time the employee spent driving to his first job site varied significantly from day to day, the time was not compensable work time because the "extensive travel was a contemplated, normal occurrence under the employment contract" between the employee and employer. *Id.* In *Kroll v. Home Depot U.S.A., Inc.*, No. CV202-113, 2003 U.S. Dist. LEXIS 24903, *1 (S.D. Ga. Aug. 20, 2003), the employee was properly paid "straight time" for attendance at off-site training and six mandatory off-site meetings but was not entitled to overtime under the FLSA for travel time to those meetings because the assignments were not considered "special" or "unusual." In another case, the time spent by bus drivers required by the city to be shuttled to relief points before and after split shifts was compensable, though the time spent traveling to the first and from the last shift of the day was not compensable, regardless of whether the bus drivers used city-operated shuttles. *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109 (10th Cir. 1999). The Tenth Circuit has also decided that rig hands did not begin their shifts when meeting off-site to carpool, even though they occasionally carried equipment and paperwork or held safety discussions during the travel time.[4] *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1290-92 (10th Cir. 2006).

In another case where the "home to work" commute was at issue, the court found that limousine drivers who owned their own vehicles were not entitled to compensation for travel time to the principal activity, even if they spent time at home cleaning and maintaining their vehicles prior to the commute. *Powell v. Carey Intern., Inc.*, 514 F. Supp. 2d 1302, 1320 (S.D. Fla. 2007). The Eleventh Circuit has held that time spent by employees passing through mandatory check points at

---

[4] The Court does not find Allstar's comment regarding what it calls Knight's "vanilla overtime claim" to be professional or particularly helpful in deciding the merits of this case.

an airport and traveling on FAA-authorized security buses to the tarmac job site was not compensable because it was undisputed that the employees did not perform work while waiting for or riding the buses and did not engage in any work-related activity that was "integral and indispensable" to their work. *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1343-45 (11th Cir. 2007). Allstar also offers *Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1383 (11th Cir. 1997), in support of its contention that the question of what constitutes "work" for the FLSA is a matter of law. (Doc. No. 29 p. 19.) The court in *Alvarez* explained that "[a]ctivities performed before or after the regular work shift are [] compensable only if they 'are an integral and indispensable part of the principal activities for which covered [employees] are employed.' " *Alvarez*, 124 F.3d at 1384 (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)).

Finally, Allstar argues that its inability to locate Knight's missing time sheets does not automatically preclude the Court from grating its motion for summary judgment. (Doc. No. 29 p. 20.) Allstar acknowledges that it is the employer's duty to maintain accurate records but asserts that "there is no question that [Allstar] kept accurate records of pay for its employees" and that Allstar produced all payroll records to Knight's counsel. (*Id.* at 21.) Allstar concludes that there is also no question that Knight "had no idea" how much, if any, overtime Allstar owed him. (*Id.*)

In Knight's response in opposition, he argues that several genuine issues of material fact preclude the entry of summary judgment against him. (Doc. No. 40 p. 2.) These issues include falsification of Knight's time sheets, reduction of hours on his time sheets, and failing to pay Knight for hours worked. (*Id.*) Knight argues that company policy required him to report to work at 5:30 a.m. to "load and secure tools and materials." (*Id.*) (citing Knight's deposition (Doc. No. 29-2) pp.

30-31). He states that he traveled to job sites in Jacksonville, St. Augustine, and Kissimmee. (*Id.*) Knight asserts that Allstar received the benefit of his labors without compensating him. (*Id.* at 2-3.) Knight argues that Mark Heino ("Heino"), an Allstar supervisor, testified that the employees were only permitted to record work time once they arrived at a job site and until they left the site. (*Id.* at 3) (citing Heino's deposition (Doc. No. 40-4 ) p. 24). Knight contends that Allstar is only trying to obfuscate the issue of whether it owes him overtime compensation by arguing that it paid him some overtime. (*Id.*) According to Knight, several of his time sheets produced by Allstar were altered or contained handwriting that was not his. (*Id.* at 4.) Also, he asserts that although Allstar failed to maintain his time sheets, the verified summary filed on behalf of Allstar shows he worked the hours claimed, as does the "Chart of Hours" produced in response to Allstar's discovery request.[5] (*Id.*) Knight contends that Allstar President Thomas Crowe's ("Crowe") testimony that employees such as Knight rode in the company trucks voluntarily is speculative because Crowe testified that he did not know Knight. (*Id.*) (citing Crowe's affidavit (Doc. No. 29-2) p. 2 and deposition (Doc. No. 32-6) p. 5). Knight asserts that Allstar does not dispute that Knight's time sheets are missing. (*Id.* at 5.)

Knight argues that heightened pleading is not required in FLSA cases, contrary to Allstar's repeated assertions that the complaint "should be dismissed for failing to state a cause of action." (*Id.* at 6.) According to Knight, because Allstar is wrong about the heightened pleading requirement, Allstar's motion for summary judgment should be denied. (*Id.* at 7.) Knight also contends that a fact issue remains because Knight's deposition contradicts Crowe's affidavit regarding whether Knight

---

[5] Knight produced a "Chart of Hours" showing the amount of overtime he claims Allstar owes him for dates worked from October 7, 2006, to November 2, 2007, totaling $989.00 for 61.75 hours. (*See* Doc. No. 48-2.) He served this chart on Allstar on March 24, 2009. (*See id.*)

had the option of riding in his own vehicle. (*Id.* at 7-8.) The contradiction arises, according to Knight, between Crowe's testimony that employees were told that riding in company trucks was a benefit for which they would not be paid and Knight's testimony that driving his own car was "never an option" for him as it was never offered to him and he "was required to do work at 5:30 in the morning." (*Id.*) (citing Doc. No. 29-2 pp. 29-30). Knight argues that even if Allstar had not asked him to do the work, Allstar must pay him for that work if it knew or had reason to believe that he "continue[d] to work." (*Id.* at 8) (citing *Allen v. Bd. of Pub. Educ. for Bibb County*, 495 F.3d 1306, 1318 (11th Cir. 2007)).

Knight also contends that Allstar failed to keep accurate time sheets, precluding the entry of summary judgment in its favor. (*Id.* at 9-12). Knight does not explain how this precludes it but asserts that though he provided "a chart documenting the dates, times and hours worked for which he was not paid," Allstar has not presented any evidence "to contradict the overtime hours" Knight claims he is owed. (*Id.* at 10.) Knight cites *Kornexl v. Bailey*, No. 6:04-cv-944-Orl-DAB, 2006 U.S. Dist. LEXIS 32754, *3-4 (M.D. Fla. May 24, 2006), where the court awarded overtime compensation to the plaintiff even though he "was unable to exactly prove the amount owed to him" because of the defendant's failure to keep adequate records. The court found that evidence in the form of what it deemed credible testimony by the plaintiff and another witness provided a "just and reasonable inference" that plaintiff worked a 60 hour workweek on average, which the defendant did not negate. *Id.* at *7. Knight also cites a case where the court "relied on a [sic] affidavit from the plaintiff in order to establish the compensation due . . . ." (Doc. No. 40 p. 12) (citing *Gray v. Golden Bear Day Sch., Inc.*, 2008 U.S. Dist. LEXIS 89284, *6 (M.D. Fla. Oct. 22, 2008)). Further, Knight asserts that "[t]he

issue of falsified time sheets as well as altered time sheets precludes entry of summary judgment" in favor of Allstar. (*Id.* at 14.)

Finally, Knight contends that all work-related travel is not exempted by § 254(a) of the Portal-to-Portal Act. (*Id.* at 14.) He argues that he is entitled to compensation for his time spent traveling outside the normal commuting area, which he asserts is any job site outside of Volusia County. (*Id.*) Knight argues that "[i]t is undisputed that [he] would pick up, load and secure tools before traveling from the designated work place to the job site." (*Id.* at 15.) Thus, Knight contends, "those hours traveling from [Allstar's] offices in Ormond Beach to the job site must be counted." (*Id.*) (citing *Burton v. Hillsborough County, Fla.*, 181 Fed. Appx. 829, 834 (11th Cir. 2006)[6]: "Where an employee is required to report to a meeting place to perform other work there, or to pick up and to carry tools, the travel time from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom or practice.").

## B. Summary Judgment Standard

A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994)).

---

[6] In the Eleventh Circuit, unpublished decisions are persuasive but not binding authority.

"There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Id.* at 1349. The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

**C.      The FLSA and the Portal-to-Portal Act**

The FLSA requires employers to compensate employees for hours above forty worked in a workweek "at a rate not less than one and a half times" an employee's regular rate. *Allen*, 495 F.3d at 1314 (citing 29 U.S.C. § 207(a)(1)). " '[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.' " *Id.* (quoting *Reich v. Dep't of Conservation & Nat. Res.*, 28 F.3d 1076, 1082 (11th Cir. 1994)). The plaintiff has the burden to prove that he or she was "suffered or permitted to work without compensation." *Id.* (citing 29 U.S.C. § 201 *et seq.*).

The Portal-to-Portal Act, 29 U.S.C. § 254(a), exempts certain activities from compensation under the FLSA. *See Bonilla*, 487 F.3d at 1342. The following activities are exempted:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within

the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

To prove that he is due overtime compensation under the FLSA, Knight must show that the activities he performed were either primary activities or were preliminary or postliminary activities "integral and indispensable" to his primary duties. *See Bonilla*, 487 F.3d at 1344. To determine whether such activities are integral and indispensable, the Eleventh Circuit considers the following factors: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer. *Id.* (citing *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)).[7]

Knight has failed to carry his burden to present evidence from which a reasonable jury could conclude that his activities constituted compensable work time under the FLSA; therefore, Allstar is entitled to summary judgment.[8] He has neither shown that the activities he performed were integral and indispensable to his primary job duties and not simply incidental to the use of the vehicles; nor has he shown that he was required to ride in company vehicles or outside of the normal commuting area. Because the Court finds the hours Knight claims to be non-compensable, it does not reach his

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

[8] Judge Scriven reached the same conclusion in *Balzarano*, holding that for similar facts and evidence presented, the plaintiff did not carry his burden to prove entitlement to overtime compensation under either the FLSA or the Portal-to-Portal Act and that Allstar was entitled to summary judgment. *See* Case No. 6:08-cv-1281, at *6.

argument that Allstar's motion for summary judgment should not be granted on account of the missing time sheets.[9]

**D.     Knight's Objections to the Report and Recommendation**

**1.      First Objection: The Chart of Hours was Timely Filed**

Knight argues that the "Chart of Hours" was timely because it was served on Allstar on March 24, 2009, which was prior to the discovery deadline of May 20, 2009. (Doc. No. 48 p. 2.) The Court does not reach this objection because it finds that the hours represented on the chart are not compensable work time, as discussed below.[10]

**2.      Second Objection: A Genuine Issue of Material Fact Exists as to Whether Jacksonville and Kissimmee are Within the Normal Commuting Area of Allstar**

Knight argues that Allstar's motion cannot be granted because of conflicting testimony regarding the normal commuting area. (*Id.* at 6.) However, Knight has not produced evidence to show that a genuine issue of material fact remains regarding whether these locations were within the normal commuting area. Heino, the Allstar supervisor, explained that because Allstar contracts for work outside of Volusia County, an Allstar employee's normal commuting area includes sites outside of the county. (Doc. No. 29-9 p. 1.) Also, he stated that employees are informed that they will not be paid either for driving their own cars or riding company trucks to those sites (*id.* at 2), which

---

[9] In the Court's view, the missing time sheets are irrelevant to Knight's overtime compensation claim because Knight does not base the hours for which he claims compensation on his time sheets. In his deposition, when asked whether he always began work for the Kissimmee job at 5:30 a.m. and ended at 5:30 p.m., he stated that the time sheets would probably not help him answer that question but that his lawyer would. (Doc. No. 29-2 p. 52.) He also stated in his affidavit that the chart is his "best recollection" but gave no other basis for the chart. (*See* Doc. No. 40-3 p. 1.)

[10] For the same reason, the Court does not reach the issue of whether the chart is a "sham affidavit." In any event, Knight did not object to Judge Baker's conclusion that it is a sham affidavit.

Knight never disputed. Even now Knight only argues that because his own time sheets show that he spent more time in Palm Coast and St. Augustine than in Jacksonville, this "creates a genuine issue of material fact as to whether Jacksonville and Kissimmee were within [Allstar's] normal commuting area at the time he rode in [Allstar's] vehicles." (Doc. No. 48 pp. 6-7.) Such an implication does not constitute the evidence necessary for Knight to show that a genuine issue of material fact exists regarding the normal commuting area.

3. **Third Objection: A Genuine Issue of Material Fact Remains as to Whether Knight Voluntarily Chose to Ride in Allstar's Vehicles**

Knight also argues that factual issues remain regarding whether Knight was required to ride in a company vehicle to and from the job site. (*Id.* at 7.) Allstar's president testified that employees such as Knight chose to ride in the trucks to save gas money and prevent wear and tear on their personal vehicles. (*See* Doc. No. 29-1 p. 2.) Knight offers nothing to suggest otherwise. Knight never actually states that Allstar required him to ride; he only testifies that driving his own car was not "an option" for him. (*See* Doc. No. 29-2 pp. 29-30.) Knight instead attempts to classify the time he spent in the employer-owned vehicles as work time instead of travel time. (*See id.*) However, the Portal-to-Portal Act exempts from compensation those activities that are "undertaken for the employees' own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer." *Dunlop*, 527 F.2d at 398. Knight does not demonstrate that his activities do not fall under these categories. Although Knight contends he testified that "while in [Allstar's] trucks his involvement went beyond receiving instructions" (Doc. No. 48 p. 9), his only testimony regarding such activity was: "We had the timesheets or we would fill out safety sheets and other things." (*See* Doc. No. 29-2 pp. 29-30.)

Knight distinguishes *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994), which Judge Baker cited within another citation for its holding that the length of travel time does not make the time compensable under the statute. (*See* Doc. No. 47 p. 12.) Knight contends that *Vega* is distinguishable because the labor-contractors in *Vega* were not entitled to compensation due in part to the voluntary nature of riding in their employer's buses. (*See* Doc. No. 48 p. 8) (citing 36 F.3d at 425). The Court finds Knight's distinctions neither applicable nor helpful to his argument. Instead, the decision in *Vega* supports Judge Baker's conclusion. As the workers in *Vega*, Knight has shown no proof that he was required to ride in the trucks; nor has he shown that he performed legally cognizable work before or while riding. Further, the *Vega* court found that the labor contractors' travel time was not compensable, even though the workers were told on the bus which field they would be working and their pay rate for that day. *See* 36 F.3d at 425. Discussing the "game plan" each morning during Knight's ride to the job site is comparable to the day-laborers' instructions and likewise does not make Knight's voluntary ride time compensable.

**4.      Fourth Objection: A Genuine Issue of Material Fact Exists with Respect to Knight's Primary Job Duties**

Knight argues that Judge Baker's R & R "placed a limited definition on his primary job duties." (Doc. No. 48 p. 11.) Knight cites his answer to the Court's interrogatories for evidence that his primary job duties "were to drive to the company shop, pick up materials and travel to job site for purposes of assisting the head carpenter by carrying base boards and crown molding from the saw to the wall and nailing in place." (*Id.* at 10.) As previously discussed, for these activities to be compensable, they must be integral and indispensable to the activities for which the employee is principally employed. *See Dunlop*, 527 F.2d at 399 (citing *Steiner*, 350 U.S. at 248). In *Steiner*,

employees at a battery plant who worked with dangerous chemicals changed clothes at the beginning of their shifts and showered at the end. 350 U.S. at 248. The Supreme Court found that these activities were an integral and indispensable part of the principal activities for which the workmen were employed and thus compensable under the Portal-to-Portal Act. *Id.* at 256.

The activities for which Knight claims compensation were not an integral and indispensable part of those for which he was principally employed. According to his own testimony, when he was picked up at the meeting site for the Kissimmee job, the driver would bring the materials, and then Knight tied down "[n]ails, screws, buckets, [] bits, drills, and other things" in the back of the truck so that they would not "blow out along the way." (*See* Doc. No. 29-2 pp. 30-32.) Presumably Knight moved them, as Judge Baker states, so that he could sit in the truck. (*See* Doc. No. 47 p. 10.) Knight's testimony supports this presumption. After Knight testified that he had to report to work for a job in Kissimmee at 5:30 a.m. to load the trucks, when asked what sort of work he had to do at 5:30 a.m., Knight responded, "There would be tools inside the vehicle, the cab, that I would have to take out, secure in the back, secure materials." (Doc. No. 29-2 p. 30.) He did not claim that he had to pick up or load any tools or materials.[11] As discussed above, Knight testified that during the ride he had to fill out time sheets, safety sheets, and "other things." (*Id.* at 29.) Again, as previously discussed, Knight also testified that "we were required to talk about what we were gonna do, get a game plan together, understand what our job for the day was on the ride there." (*Id.* at 30-31.) Though Knight

---

[11] In Knight's amended response in opposition to Allstar's motion for summary judgment, he attempts to characterize Heino's testimony that Knight would show up at the job and carry material as if these duties occurred at the meeting site prior to Knight's ride to the job site. (*See* Doc. No. 40 p. 3.) When the statement is read in the context of Heino's deposition, Heino is actually describing Knight's duties as a laborer at the job site. (*See* Doc. No. 40-5 p. 22.)

-14-

argues in his opposition to the R & R that these were part of his primary job duties, the Court finds these activities to be quintessentially preliminary and not integral or indispensable.

**5.     Fifth Objection: Heightened Pleading Not Necessary in FLSA Claims**

The Court agrees that the FLSA does not require heightened pleading; however, the magistrate judge did not apply a heightened pleading standard in his decision, and Knight's objection is baseless. As mentioned above, Judge Baker points out that Allstar was incorrect in its motion for summary judgment to assert the standard of review for a motion to dismiss. (Doc. No. 47 p. 7 n.4.) Judge Baker did not require a heightened pleading standard by stating that Knight needed to supplement his wage claim with more detail. Instead, Judge Baker was correctly looking for evidence sufficient to survive Allstar's motion for summary judgment, which he did not find. When viewing all of the evidence submitted in the light most favorable to Knight, he has not carried his burden to produce evidence from which a reasonable jury could conclude that he was due overtime compensation. No genuine issue of material fact remains, and Allstar is entitled to judgment as a matter of law. Accordingly, the Court will grant Allstar's motion for summary judgment.

## III. CONCLUSION

Therefore, it is ORDERED as follows:

1. The Report and Recommendation (Doc. No. 47), filed September 30, 2009, is ADOPTED and CONFIRMED and made a part of this Order.

2. Defendant Allstar Building Materials, Inc.'s Motion for Summary Judgment (Doc. No. 29), filed June 19, 2009, is GRANTED.

3. Defendant Allstar Building Materials, Inc.'s Motion in Limine (Doc. No. 34), filed July 23, 2009 is MOOT.

4. The trial of this case, previously set for December 1, 2009, is CANCELLED.

5. The Clerk is directed to enter a FINAL JUDGMENT providing that the Plaintiff, David Knight, shall take nothing on his claims against the Defendant, Allstar Building Materials, Inc. The judgment shall further provide that the Defendant shall recover its costs of action.

6. The Clerk shall close this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida, on November 17, 2009.

Copies furnished to:

United States Magistrate Judge
Counsel of Record

*Anne C. Conway*
ANNE C. CONWAY
United States District Judge